56 CCPA

**Application of James W. FARMER.**

**Patent Appeal No. 8087.**

United States Court of Customs and Patent Appeals.

Feb. 20, 1969.

Leonard F. Stoll, Robert E. LeBlanc, Le Blanc & Shur, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D.C. (Jere W. Sears, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

WORLEY, Chief Judge.

This appeal is from a decision of the Board of Appeals affirming the rejection of claims 18–28 in appellant's patent application[1] under 35 U.S.C. § 103.

Appellant's invention relates to a self-contained, spring-driven timing switch of small size, suitable for switching applications in telemetry, programming, and space technology fields. Essentially the timing switch includes a clockwork watch movement in which the watch output shaft, instead of carrying a minute hand, is provided with a wiper arm or contact brush which is rotated successively over a plurality of circumferentially distributed, conductive segments in sequential electrical contact therewith. To provide sufficient torque to drive the contact brush, the watch movement is provided with a mainspring of greater torque than that

[1]. Application of James W. Farmer, filed April 16, 1963, Serial No. 273,481, for "Spring Driven Timing Switch."

normally provided in watch movements. Additionally, the watch movement operates at a beat frequency of at least 7.5 beats per second.

Claims 18–28 all recite specific numerical limitations as to the beat frequency. Claim 18 is representative:

18. A timing unit for driving an output shaft with a substantial load comprising an anchor escapement timing movement of less than one cubic inch having an operating frequency of at least 7.5 beats per second.

In addition, claims 26–28 include limitations relating to the details of the switching structure.

The examiner rejected all the claims under § 103 as obvious in view of U. S. Patent No. 1,295,876 to Edmundson.[2] Edmundson discloses a man's wristwatch provided with pairs of electrical contacts adjacent each hour position of the watch, with the contacts in each pair being electrically bridged by the hour hand of the watch as it comes to the adjacent hour position. Any pair of contacts may be selectively connected to an electrical alarm circuit, so that the alarm circuit is operated when the hour hand of the watch reaches a particular hour selected on the watch.

The board sustained the rejection of all claims under § 103, stating:

Admittedly time pieces are known to the art having a normal beat rate higher than 6 per second. See specification, page 5. It would seem obvious that such devices would require a mainspring having a higher torque than those having the lower beat rate.

We also note that the specification on page 4, lines 16 to 21 indicates that in conventional size watches an increase in the beat rate is accompanied by a stronger mainspring, this would indicate a mainspring with higher torque. Thus, it seems to us

that the prior art recognized the necessity of tailoring mainspring torque and beat frequency to meet the load demands. Hence, the evaluation of particular torques and beat frequency for a particular load requirement would be well within the capability of one skilled in the art.

Here, appellant points out that Edmundson issued more than 44 years before the filing date of the instant application and states:

* * * it is not seen how such a modification can be reasonably held to be obvious if it has escaped the workers in the field during the some 44 intervening years subsequent to the issuance of the Edmundson patent.

Appellant also takes issue with the board's position that devices having a higher than normal beat rate "would require a mainspring having a higher torque than those having a lower beat rate," by pointing out that in some larger time pieces (e. g., pendulum clocks) a stronger mainspring is often accompanied by a low beat rate. In any event, appellant argues, there is no teaching of increasing the mainspring torque in a watch mechanism to meet load demands and, in particular, to produce an output torque necessary for switching. Appellant also draws attention to the specific limitations in claims 26–28 relating to details of the switching structure which, it is argued, are not even remotely suggested by the Edmundson patent.

Responding to those arguments, the solicitor contends that there is little significance in the long lapse of time since Edmundson issued, noting, as did the examiner, that it is only since the comparatively recent growth of space technology that there has been any great need to provide an electrical switching device driven by a small size clockwork mechanism. He urges that Edmundson quite clearly discloses the basic concept

2. The examiner also cited, but did not specifically apply, the following references:

Tabet      U.S. Patent No. 2,971,066
Straumann    U.S. Patent No. 3,099,128

of an electric switching device driven by a clockwork watch mechanism and argues that appellant's invention amounts to no more than obvious modifications of a conventional watch mechanism that would be apparent to a skilled watch mechanic. The solicitor states:

In the event that a conventional wrist watch movement were found to lack adequate output power to satisfactorily move a sweep contact in a missile-destined timer switch, several obvious alleviating steps might be taken. Perhaps the first that might be resorted to would be to strengthen the mainspring, which serves as the only source of driving energy when wound. However, the flow of stored energy from the wound mainspring to the output pintle is governed by the beat of the watch balance, which determines the advance of the escape wheel forming part of the gear train. * * * This "throttle" on the rate of energy flow to the output pintle, or usable power, may be opened by increasing the beat of the balance. As noted by appellant, "[i]t is, of course, fundamental physics that the operating frequency of a timing unit is established by the balance and more specifically by the ratio of the rotary mass of the balance wheel to the restoring force (hairspring force)" * * *. Accordingly, tailoring of the mainspring and beat of the watch movement, to yield greater output power at the sacrifice of running time, "would be well within the capability of one skilled in the art" * * *.

It appears to us that reasoning accurately analyzes the situation here in regard to the issue of obviousness. With regard to the particular details of the switching structure recited in claims 26–28, we note that appellant did not suggest that there was any patentable significance in those limitations before the board and we do not feel that patentability can be rested upon them at this late stage.

As the rejection of all claims has been sustained under 35 U.S.C. § 103, it is unnecessary for us to consider an alternative rejection of claims 18 and 19 under 35 U.S.C. § 112 which the board sustained.

The decision is affirmed.

Affirmed.