57 CCPA

**Application of Thomas B. McGUIRE and Andrew Pogan.**

**Patent Appeal No. 8189.**

United States Court of Customs and Patent Appeals.

Oct. 23, 1969.

Rehearing Denied Dec. 4, 1969.

Bruce B. Krost, Woodling, Krost, Granger & Rust, Cleveland, Ohio, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents, Lutrelle F. Parker, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, GANEY, Judge, sitting by designation, ALMOND, BALDWIN and LANE, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 5, 10, 11, 13, 17, 19, and 21 of application serial No. 375,217, filed June 15, 1964, entitled "Tool for Internally Cutting a Tube at an Angle to the Axis Thereof." Five claims have been allowed.

The claimed invention is a tool used for cutting tubing or pipe, such as copper tubing used as water lines in buildings. Appellants' brief informs us that conventional plumbing procedure calls for the rough installation of lengths of tubing in the open walls and spaces below the floors of buildings under construction such that the ends of the in-

dividual lengths extend slightly beyond the points where connections are ultimately to be made. Subsequently, it is necessary to cut off the excess tubing at the exact location where an "L" or "T" fitting, for example, is to be introduced. It is this cutting-off operation for which appellants' tool is said to be particularly well suited.

Setting the stage for a description of the claimed tool, appellants' brief states the following about certain prior art pipe and tubing cutting tools and the alleged shortcomings thereof:

The customary tool used in the plumbing trade for cutting off the "throwaway" piece is an external cutter * * *.

A typical external cutter has a C-shaped member that embraces the tubing and which carries rotatable disk cutters directed inwardly toward the outer wall of the tube. The C-shaped member usually has a handle extending outwardly and by manually revolving the C-shaped member carrying the cutter disks around the tube, the cutters cut into the outer wall of the tube. Means are provided on the C-shaped member for gradually moving the cutter disks toward each other against the tube as they progressively cut into the tube wall during revolving of the C-shaped member around the tube.

There are distinct disadvantages in the use of such external cutters. First, very often there is not sufficient space around the outer wall of the tube to swing the cutter therearound. Sometimes, the tubing is extending alongside and very closely to a floor joist * * *. Sometimes, the tubing is extending up from a floor in the corner of a room too close to the walls for the revolving of the external cutter.

Heretofore, in such tight situations plumbers have sometimes laboriously used a hack saw, but this is awkward and difficult in a cramped and confined space. Worse still, the hack saw multilates, pinches and chews up the end of the tubing where cut, particularly the relatively soft copper tubing commonly used in installing water lines in a building. This requires considerable secondary operations on the tubing at the location of the saw cut, such as reaming it out to bring it back to cylindrical shape, removing burs and slivers, and trying to restore the cut end of the tubing so that it will fit readily and properly into the cylindrical socket of a coupling, "L" or "T" fitting for connection to another length of tubing.

The external cutters have been the customary and standard tool used by plumbers for cutting off these end portions of tubing, notwithstanding their limitations on use in confined and restricted space. However, they have other serious shortcomings, such as the pinching of the metal wall of the tubing inwardly as the disk cutters progressively cut into the tube wall. This is particularly true of the softer metals such as copper, brass and aluminum, and which are now commonly used in installing lines in a building, such as water lines and electric cable conduits. This pinching in of the tube wall where cut seriously decreases the internal diameter of the tube and leaves a burred, rough edge directed inwardly of the tube. This necessitates the subsequent reaming out of the tube at the location of the cut to try to bring it back to its original true cylindrical form, and to remove the burs and sharp edges at the location of the cut. * * * For the tube end to fit readily and properly into the cylindrical socket of a coupling, "L" or "T" fitting, it should be a true cylinder free of burs and the like.

Another approach has been tried out for cutting a tube, this being by means of an internal cutter. Such an internal cutter has been the type that has been used for cutting out steel tubes in a steam boiler in the removal of deteriorated steel tubes from the steel walls of the boiler in

**1324**

its renovation. In such internal cutters used for cutting the boiler tubes, a shaft was inserted into the open end of the tube from outside the boiler. The shaft carried either cutting disks or a cutting blade which was forced radially outward against the inner wall of the steel tube. The direction of the travel of the cutters was radially outward *in a plane normal* to the axis of the tube and of the shaft. As the shaft was rotated on its axis, the cutters would revolve around the shaft axis against the inner wall of the tube and progressively cut directly into the tube so as to sever it from the boiler wall.

A very serious shortcoming of such internal cutting tools that had been used for cutting steel boiler tubes was that when the tool was utilized on copper, brass, aluminum, and other soft metal tubing, the cutters bellowed out or beaded the metal wall as they cut the metal. This resulted in a bell or flare on the end of the tubing where cut. Such a belled or flared end would not fit readily or properly into the cylindrical socket of a coupling, "L" or "T" fitting as required. * * * As a result, the plumbers usually preferred and used the external cutters with all of the shortcomings of the same. Although the boiler-tube internal cutters were old and well known, they did not become accepted to any extent in the plumbing industry dealing with tubing of the softer metals because of the described serious disadvantages and limitations of the internal cutting tools used for steel boiler tubes.

The claimed tool and the progressive steps in a cutting operation using it are shown in the following three figures from appellants' specification:

APPELLANTS

FIG.1

FIG.2

FIG.3

A shaft 12 is inserted into the open end of tubing 11 to a depth that is determined by adjustable collar 18. Shaft 12 has a transverse slot 13 extending therethrough at an *acute angle* (such as 45°) to the axis of the shaft and

tube. Disposed within slot 13 is a cutting bit 29 slidable therealong to move in a corresponding angular path.

A rod 23 extends through an axial opening 14 in shaft 12, the threaded end 23A of the rod being threaded into the outer end of opening 14. By turning knob 24, the inner end of rod 23 is caused to push against the rearward flat face 29E of cutting bit 29. This moves the bit simultaneously outwardly against the inner wall of tube 11 and at an incline away from the free end thereof.

As shown in Fig. 3, the cutting point 29A not only protrudes into the cuts the tube wall as shaft 12 is rotated, but also rides up over the tube wall as the cutting process progresses. This overriding action not only confines the tube wall to prevent it from flaring outwardly at the new tube terminal, thus holding its true cylindrical shape, but also forms the chamfered cut end 11C on the new tube terminal.

Claims 10, 11, and 21 are representative of those on appeal:

10. A tool for cutting a terminal piece from a metal tube from within the tube at a distance from the open free end of the tube, comprising a shaft insertable in said tube and rotatable therein relative to the tube wall, said shaft having an opening formed therein adjacent a first end portion and extending to a side of the shaft, said shaft having a second end portion accessible from the free end of said tube, said opening having a guide surface defining a wall on the side thereof farthest removed from said second end portion, said guide surface being disposed in a plane at an acute angle to the axis of the shaft and inclined away from said second end portion, a cutting bit disposed in said opening and having a side surface slidably engaging said guide surface of said opening and disposed at said acute angle, said cutting bit being

revolved by the shaft with the rotation of said shaft, actuating means carried by the shaft and operatively engaging said cutting bit to urge said cutting bit outwardly of said opening at said acute angle toward and against the wall of a tube in which the tube is inserted, said cutting bit having a cutting edge substantially in the plane of said side surface adapted to cut said tube wall upon being urged against the tube wall and upon being revolved relative thereto by the rotation of said shaft, the said cutting bit adjacent said cutting edge and extending therefrom to said side surface of the bit that is engageable by said guide surface being inclined toward said second end portion of the shaft to over-ride the edge of the tube farthest removed from said free end as the tube is being cut by said cutting edge said overriding of said tube restraining the tube at said edge from outward flaring, said cutting bit having a length not substantially exceeding the length of said opening to be substantially accommodated therein upon being positioned in withdrawn position for permitting the ready insertion of the cutting bit in said opening wholly into a tube with said first end portion of the shaft.

11. A tool as claimed in claim 10 and in which said acute angle is of the order of 35° to 55°.

21. A tool as claimed in claim 10 and in which said acute angle is of the order of 40° to 50°.

The sole issue is whether the invention of the appealed claims is obvious (35 U.S.C. § 103) in view of the following prior art:

Thomas 70,652 Nov. 5, 1867
Vance 380,777 Apr. 10, 1888

Thomas, the primary reference, discloses a tool for cutting off the ends of boiler-tubes or tubes for other purposes wherein there is arranged, in a

suitable stock, a cutting-tool which is forced outwardly with a screw by means of a double-inclined plane. The following is Fig. 1 from Thomas:

THOMAS

*Fig: 1.*

The cutting bit E is forced *radially outward in a plane normal to the tool axis* by the turning of handle C which moves the angular end face of member *b* against the angular end face of cutter bit E. With respect to the issue of obviousness, the only material difference between the tool of Thomas and

appellants' tool is the angle of inclination of the cutting bit to the axis of the tool.

Referring to Fig. 2 of Vance, reproduced below, a cutter C is carried in a diagonal channel *a* extending through tool shaft A. The shaft is intended to be inserted into the open end of a boiler tube T from outside the boiler wall. In use, the outer end of cutter C is struck so as to cause the sharp edge thereof to completely penetrate the tube wall. The eccentric device *e* is then turned to lock the cutter in its penetrated position and shaft A is then rotated on its axis to sever the tube in one revolution.

## VANCE

*Fig. 2*

The examiner's position in the use of Thomas and Vance as references was as follows:

> The Thomas reference discloses a metal tube, shaft (a and A′) and a handle (C) for rotating said shaft. A cutting bit (E′) is carried by the shaft and having means (b) to actuate the cutting bit and to adjust the protrusion of said cutting bit. The end of the actuating means (b) is inclined to engage the opposed surface of the cutting bit for slidable movement of said parts relative to each other, to vary the protrusion of the cutting bit. The cutting bit is sufficiently short so as to permit said bit in withdrawn position to be located within the tool, in order that it may be readily inserted or withdrawn from a tube.

> The Vance reference discloses an internal tube cutter having an adjustable cutting bit that is positioned at an acute angle as included in these claims. The cutting bit also produces a bevel on the end of the severed pipe as stated above in the description of the Vance reference. To have

the cutting bit of Thomas provided with additional cutting means to produce a bevel on the end of the severed pipe and positioned at an acute angle to the axis of the tool and tube as disclosed by Vance would be an expedient obvious to one skilled in the art in accordance with 35 U.S.C. 103, because it is merely a mechanical design feature as well as selecting various old features from the prior art and incorporating same into a single device, with each performing their old function.

The board essentially agreed with the examiner, saying "it is our opinion that it would be obvious to one skilled in the art to have the cutting means in Thomas extend at an angle to the axis of the tube as disclosed by Vance."

Appellants argue the century-old status of the references but this argument does not impress us, absent some showing that the art tried and failed to solve some problem notwithstanding its presumed knowledge of the references. For aught that appears, as soon as the need for an inside tubing cutter for copper tube was perceived it was

produced out of the accumulated skill of the art.

Appellants rely heavily on the argument that the steel boiler-tube cutters of the references do not make their claimed invention obvious within the meaning of section 103 because it would not be apparent therefrom that internal cutters used on copper or other soft metal tubing would cause it to bulge from the pressure exerted thereon, thus making subsequent assembly with other fittings difficult. But this desideratum of maintaining the external diameter of the cut tube was contemplated and disclosed by Vance, who says:

> The chisel-pointed cutting edge *c* of the inclined cutter *c* produces a beveled cut on the end of the severed tube, and thereby leaves the same in proper shape to allow it to be removed through the same hole in the flue-sheet in which it was seated, and also in suitable shape for scarfing and welding the said end of the tube.

Obviously, if the boiler tube initially fits closely in the hole in the flue sheet, as clearly it does, it is not bulged by the cutting tool because of the angle of the cutting tool which exerts an inward pressure on the tube end as the cut is made. Thus the tubing can be withdrawn through the hole. It seems evident to us that Vance contemplated that a cut otherwise made might bulge the tube—even the steel boiler tube. Surely one skilled in this mechanic art would appreciate the elementary fact that the softer the metal the greater the bulge. Avoiding bulge was clearly uppermost in Vance's mind as he mentions it twice in his specification. The specification would convey this teaching to those skilled in the art and suggest the advantage of the cutter angle shown by Vance, which corresponds to the angle of appellants' claims.

We see no error in the rejection and the decision of the board is affirmed.

Affirmed.