58 CCPA

**Application of Irvin D. JOHNSON.**
**Patent Appeal No. 8408.**

United States Court of Customs
and Patent Appeals.
Jan. 7, 1971.

Joseph C. Herring, Richard C. Willson, Jr., Littleton, Colo., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Lutrelle F. Parker, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NEWMAN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1–5 and 7–11 of appellant's application entitled "Refractometer." [1] No claims were allowed.

The invention relates to a refractometer capable of emitting an electrical signal indicative of the refractive index of the fluid being tested. The refractometer, which consists of three principal elements: a source of illumination, a hollow prism, and a photopotentiometer, is shown in Fig. 1:

[A3415] *Fig.1*

The refractive index of a fluid flowing through pipe 11 may be determined by shining a light from source 15 through the prism walls 13 and 14. The light is refracted by the fluid in the prism onto photopotentiometer 16, which produces an electrical signal proportional to the displacement of the light beam along the photosensitive surface of the potentiometer. The output from the potentiometer may be read on a voltmeter 20, it may be used to actuate valve controls, or it may be used with servo mechanisms, graph recording means, etc.

Claim 1 is illustrative:

1. The device comprising a photopotentiometer for generating an electrical signal proportional to the distance between a reference point on said photopotentiometer and a point on a photoconductive strip of said potentiometer which point is being irradiated, a refractometer adapted to irradiate a portion of the photoconductive strip and adjacent elements of the photopotentiometer with refracted electromagnetic radiation of an amplitude at least sufficient to permit electron flow across said photoconductor strip, and at least one voltage controlled actuator means connected to said photopotentiometer.

Claims 2–5 and 7–11 add limitations directed to the particular type of actuator means; that is, these claims specify whether the actuator means involves a voltmeter, servo mechanism, valve control, or graph recording means. In addition, several of the claims specify that the refractometer is used "for measuring the refractive index of static fluids." No distinction between the claims has been drawn, and accordingly they apparently will stand or fall together.

The references relied upon are:

| | | | |
|---|---|---|---|
| Prince | | | |
| (Great Britain) | 339,976 | December 8, | 1930 |
| Pierson | 2,483,102 | September 27, | 1949 |
| Meyer | 3,093,741 | June 11, | 1963 |

Prince discloses an apparatus for measuring the level of a fluid in a tube as best shown in Fig. 3:

*Fig. 3.*

[A3416]

Light J from source A is directed through tube B containing fluid F. The light will be refracted by the fluid and picked up by a photocell E. A fluid of different refractive index will cause the light beam to hit the shield M and not the photocell E.

Pierson discloses a refractometer as shown in Fig. 1b:

Fig. 1b

[A3417]

Light 8 from source 5 is directed through a hollow prism 2 through which a liquid flows. The light beam 8 is refracted by the liquid in the prism and is initially set to impinge upon a null point 24 between mirrors 16 and 17. Thereafter an increase in refractive index of the fluid causes the beam to move so as to impinge upon mirror 16 and thus on the photocell 12. This causes carriage 14, which may operate a recording pen 18 or valves, pumps, etc., to move to a point where the beam is again in the null position between mirrors 16 and 17. Conversely, a decrease in the refractive index of the fluid will cause the beam to impinge upon mirror 17 and thus the photocell 13, resulting in the carriage moving in the opposite direction.

Meyer discloses a photopotentiometer, the output of which is proportional to the position of the light beam upon its surface. Meyer discloses that an application where his photosensitive device is used to advantage is in the measurement of alveolar oxygen concentration. Oxygen is passed through a sample tube placed in a magnetic field and a pivoted mirror is mounted inside the tube in such a manner that its position varies with a change in the magnetic field produced by a change in the oxygen concentration. Thus, the position at which the light beam strikes the photopotentiometer is an indication of the concentra-

tion of the oxygen in the tube. The output of the photopotentiometer may be fed into an amplifier and recorder, or used with a servo system.

The examiner rejected the claims under 35 U.S.C. § 103 as unpatentable over Prince in view of Meyer. The board affirmed, reasoning that it would be obvious to substitute the photopotentiometer of Meyer for the bridge of Prince and record the liquid level on Meyer's recorder. In response to appellant's contention that the device of Prince is not a refractometer, the board stated that it "is a refractometer in the sense that it indicates whether or not the substance in the beam has a predetermined index of refraction." The board then cited the Pierson reference and added a new rejection based upon it. The board stated:

In accordance with Rule 196(b) we reject claims 1 through 5 and 7 through 11 under 35 U.S.C. 103 as being obvious in view of Pierson and Meyer (cited in the Answer). Pierson shows a refractometer with a movable carriage 14 which moves up and down in accordance with the position of the refracted beam. Pierson uses the carriage to operate a recording pen and also states that valves, pumps or motors may be operated in accordance with the position of the beam. Meyer discloses an element 25 which has an output voltage dependent on the position of a beam of light in a manner similar to appellant's element 16 and states * * *: "Although the device has been described in connection with the measurement of alveolar oxygen, it is apparent that it is applicable generally to the translation of the position of a light beam into electrical signals." On page 9 of his brief appellant has acknowledged that Meyer's element 25 is the equivalent of his own element 16. Meyer also states that his device might be used in a "positional servo system."

It is our opinion that one of ordinary skill in the art, having the Meyer

patent and the Pierson patent before him, would find it obvious to substitute Meyer's apparatus for translating the position of a light beam into an electrical signal for the movable carriage of Pierson.

Appellant waived his right under Rule 196(b) to amend and to request reconsideration of the primary examiner and elected to request reconsideration of the board on the same record. On reconsideration, the board reaffirmed its original decision.

■ Turning first to Pierson, we note that the only difference between appellant's device and that disclosed by the Pierson patent resides in the photosensitive device. We agree with the board that it would be obvious to substitute the photopotentiometer of Meyer for the carriage and photocells of Pierson since such is merely the substitution of one photosensitive device for another photosensitive device to accomplish a similar function. Both types of photosensitive devices are responsive to the angle of the light beam. While appellant points out that at least fifteen elements of Pierson must be deleted to combine Pierson with Meyer, these elements are all associated with the photosensitive device of Pierson and one of ordinary skill in the art would simply replace the whole unit, no matter how many parts are associated with it, for the photosensitive device of Meyer. In fact, the simplicity of Meyer's photosensitive device would, we believe, motivate those skilled in the art to make the suggested substitution.

Appellant vigorously contends that Pierson had access to photopotentiometers, similar to the one disclosed in Meyer, for twenty years without finding it obvious to use this type of photosensitive device. Likewise, appellant argues that such photopotentiometers were publicly known thirty-three years prior to appellant's filing date during which time the invention with its simplicity and advantages has not been found obvious. In support of these contentions, appellant cited the Bacevicz patent,[2] issued in 1924, which allegedly discloses a photopotentiometer similar to the one disclosed in Meyer.

■ In regard to these arguments, it is noted that there is nothing in the record to indicate that photosensitive devices, such as the carriage of Pierson, were unsatisfactory and that workers in the art were looking for a solution to the problem. Without such a showing, the mere difference in dates is of little help, if any, in determining whether or not the suggested combination of references would have been obvious to one of ordinary skill in the art at the time of filing. As this court said in In re McGuire, 416 F.2d 1322, 57 CCPA 706 (1969), cert. denied, McGuire v. Schuyler, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 397 (1970):

> Appellants argue the century-old status of the references but this argument does not impress us, absent some showing that the art tried and failed to solve some problem notwithstanding its presumed knowledge of the references. For aught that appears, as soon as the need for an inside tubing cutter for copper tube was perceived it was produced out of the accumulated skill of the art.

In addition, in the present case the secondary reference (Meyer) is not older than the primary reference (Pierson) and was issued less than a year before appellant's filing date. Faced with this situation, appellant has relied on Bacevicz to show that photopotentiometers similar to Meyer were known as early as 1924. However, as the board noted, there are several differences between Meyer and Bacevicz, including the fact that Bacevicz's light beam is disclosed as being an amplifier for mechanical movements, whereas the Meyer device is specifically disclosed as being for use in indicating the position of a light beam.

Since we find no reversible error in the rejection utilizing Pierson as a basic

2. Patent No. 1,514,123 issued November 4, 1924.

reference, separate discussion of the rejection utilizing Prince in that capacity is unnecessary.

The decision of the board is affirmed.

Affirmed.