58 CCPA
**Application of Robert TOUVAY.**

**Patent Appeal No. 8370.**

United States Court of Customs and Patent Appeals.

Jan. 14, 1971.

John L. Seymour, Bauer & Seymour, New York City, attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

Touvay seeks review of the decision of the Patent Office Board of Appeals which affirmed the examiner's rejection of claims 1–13, the only claims in his application,[1] as obvious in view of the prior art under 35 U.S.C. § 103.

### THE INVENTION

Appellant's application discloses glass manufacturing apparatus of the type which includes generally

(1) a melting furnace heated by a series of combustion burners in the upper part thereof,

(2) discharge means for the furnace, including means for forming the molten glass into a ribbon, and

(3) a heated flotation chamber which receives the glass ribbon and

---

1. Serial No. 318,421, filed October 23, 1963, for "Manufacture of Glass".

includes a supporting bath of molten tin upon which the glass ribbon is floated as it is moved through the chamber and its viscosity is raised to a value high enough to resist marring. Appellant's apparatus further includes a source of liquid air supplying that air to a still in which it is separated by distillation into nitrogen and oxygen fractions. Oxygen gas from the still is conducted into the melting furnace at locations below the flame of the combustion burners so as to provide "a superoxygenated atmosphere below the * * * burners and above the glass" and is said to provide quicker and more complete combustion and to even the temperature across the furnace. The nitrogen from the still is supplied to the flotation chamber to maintain a blanket of nitrogen above the molten metal bath and the glass sheets.

Claim 1 reads:

1.—Apparatus for making glass including a melting furnace comprising a gas retaining enclosure containing combustion burners and glass discharge means, ribbon forming means associated with the discharge means to receive glass therefrom, a gas retaining chamber containing a bath of molten metal disposed to receive the ribbon from the forming means, a source of liquid air, a liquid air still connected to said source and including means to collect the oxygen from the distillation and means to collect the nitrogen from the distillation, first conduit means connecting the oxygen collecting means of the still to the furnace, and second conduit means connecting the nitrogen receiving means of the still to said chamber.

Of the other claims, six more are drawn to apparatus and six are drawn to a corresponding method of producing flat glass.

2. U. S. Patent 3,248,197, issued April 26, 1966, on a division of an application filed May 2, 1962.

3. U. S. Patent 683,492, issued October 1, 1901.

THE REJECTION

All the claims were rejected under 35 U.S.C. § 103 as unpatentable over Michalik [2] in view of Pictet [3] and Weymann. [4] Michalik discloses the basic apparatus for producing glass by a flotation process. Forming rolls at the output end of a glass melting furnace shape the glass into a ribbon which is delivered onto the surface of a bath of molten metal such as tin in a float chamber. "A gas which is inert to the components of the bath, such as nitrogen or the like" is introduced into the float chamber and suitable gas seals are provided.

Weymann discloses the technique of increasing the combustion temperature in melting furnaces by enriching the combustion air through the introduction of excess oxygen. The oxygen-producing device, "consisting, for instance, of a plant for producing liquid air and separating the oxygen", is powered by waste gas from the furnace, which "may be of any desired construction."

Pictet relates to a liquid air still for "extracting oxygen and nitrogen from the atmosphere in a practically pure state." The patent refers to operation "at a cost so low that the gases so extracted and separated may be utilized on a large scale in various industrial operations."

The examiner set forth the broad rationale of the rejection as follows:

Michalik et al. teaches the basic combination of a glass sheet treating and smoothing chamber containing molten tin mounted adjacent to a melting furnace with the provision of means to add nitrogen to the atmosphere over the molten tin bath. Pictet shows that the production of nitrogen and oxygen from liquified air is old and well known in the industrial arts. Weymann teaches that it is common to

4. U. S. Patent 1,479,347, issued January 1, 1924.

produce oxygen from a still containing air and directly add the oxygen to the air and fuel mixture within any melting furnace to increase the combustion of the fuel therein. Although Michalik et al. does not set forth the manner of obtaining the nitrogen for the addition to the chamber containing the molten tin, the production of nitrogen by distillation of air (as well as oxygen) is old, and well known in the arts as shown by Pictet, and the further use of an air distillation unit with melting furnaces is also old and well known as shown by Weymann. Therefore it would be obvious to mount the distillation unit of the teaching of Pictet adjacent to a glass furnace of the structure of Michalik et al. in the manner of combining a distillation unit with a melting furnace suggested by Weymann.

The board sustained the rejection, setting forth fully the reasons for its action, which did not disagree with the rationale used by the examiner.

## OPINION

■ We are convinced that the references demonstrate that the subject matter of the appealed claims would have been obvious to a person of ordinary skill in the art for the reasons stated by the examiner and the board. In particular, we agree with the board that one skilled in the present art would consider Weymann's teaching of providing a plant for producing liquid air to supply oxygen to enrich combustion in a "melting furnace" to suggest that such a procedure be employed with a conventional combustion-heated glass furnace in Michalik. Moreover, the obviousness of so using oxygen along with nitrogen as employed by Michalik for his flotation chamber would also make obvious the selection of the apparatus which Pictet discloses to provide both gases for Michalik's glass making apparatus.

■ Before us, appellant urges that his injection of oxygen into the melting furnace below the flame of the combustion burners, specified in claims 7 and 9 only, amounts to a "secondary invention" which he contends is advantageous. However, Weymann does disclose that the oxygen "may be introduced into the burners or into the heads of the furnace or into the nozzles or may otherwise be added." We find it reasonable to infer that this would suggest to one skilled in this art that the oxygen may be introduced in whichever location routine analysis or experimentation proves most effective. What is equally important, the record does not reveal that appellant suggested that there was any patentable significance in that feature before the board. Ordinarily we do not consider arguments directed to the significance of a particular limitation at this late stage unless they were raised below. See, e. g., In re Farmer, 406 F.2d 782, 56 CCPA 922 (1969). The circumstances of this appeal do not warrant deviation from this rule.

■ Lastly, appellant points to the age of the Pictet (1901) and Weymann (1924) patents and urges that Michalik, who filed in 1962, is chargeable with knowledge of their disclosures. He contends that "Michalik's failure to combine Pictet with Weymann demonstrates that the combination was not obvious to a person skilled in the art of glass manufacture." This argument is without merit. Any "failure" of Michalik to incorporate the Pictet and Weymann teachings in his own apparatus is no evidence of unobviousness here where the record shows neither that Michalik actually knew of the other references nor that he was seeking to solve a problem that is solved by appellant's invention. Compare In re Johnson, 435 F.2d 585 (Cust. & Pat.App.) decided January 7, 1971.

The decision of the Board of Appeals is affirmed.

Affirmed.