59 CCPA

**Application of Max MICHEL.**
**Patent Appeal No. 8708.**

United States Court of Customs
and Patent Appeals.
June 29, 1972.

———◆———

Herman I. Hersh, Chicago, Ill. (McDougall, Hersh, Scott & Ladd), Chicago, Ill., attorneys of record, for appellant; Keith V. Rockey, Chicago, Ill., George A. Degnan, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

MALETZ, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection under 35 U.S.C. § 103 of claims 2 and 7 in ap-

pellant's patent application [1] as obvious in view of the prior art. Having considered the scope and content of that prior art, the differences between it and the claims, and the apparent level of ordinary skill in the art, Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), we find the board was correct in its conclusions and therefore affirm its decision.

The record shows that considerable interest has developed in the use of crystalline alumino-silicate materials known as "molecular sieves" in adsorption and catalytic processes. This interest arises from the fact that the pores of the sieves are extremely small and of uniform size and thus selectively limit passage to molecules of smaller size, thereby providing a means for classification or separation of molecules by size. However, according to the specification, the molecular sieves are usually in the form of crystals which are so small as to render them difficult to use on an industrial scale. For that reason, small crystals of molecular sieves had previously been combined with binders such as alumina gel or clay to form a larger agglomerate. Such binders, however, are poor adsorbents and, when used in substantial proportions, adversely reduce the adsorbent capability of the agglomerate containing them. To solve that problem, appellant employs an activated alumina binder for agglomerating molecular sieve crystals which, he states, "provides good adsorbent characteristics and high mechanical strength." Claim 2 is illustrative of the product:

2. An adsorbent agglomerate consisting essentially of molecular sieve grains dimensioned to have a size greater than 1 micron and an inorganic binder of activated alumina in admixture with the grains.

Appellant prepares these agglomerates by the method of claim 7:

7. The method of preparing agglomerates consisting essentially of molecular sieve grains dimensioned to have a size greater than 1 micron and an inorganic binder in admixture with the grains comprising the steps of mixing the molecular sieve grains with a partially dehydrated aluminum trihydrate, agglomerating the mixture, exposing the agglomerate to moisture to harden the alumina,[2] drying the agglomerate and then calcining the agglomerate to activate the alumina.

The board affirmed the examiner's rejection of the claims as unpatentable over Plank [3] taken with Pingard [4] and Saussol.[5] Plank describes a catalyst composition comprising crystalline aluminosilicates of a particle size less than 40 microns, and preferably less than 10 microns, mixed with an inorganic matrix material which is "preferably porous, and/or catalytically active," such as silica-alumina gels, clays, silica gel or alumina gel. The aluminosilicate and matrix are mixed "in any desired manner, such as in a ball mill," and subsequently dried and/or calcined.

Pingard describes agglomerates of activated alumina. He states that it is "known" that various other ingredients, such as "catalytic materials," may be incorporated therein. Pingard's agglomerates are said to have "exceptional me-

---

1. Serial No. 560,059, filed June 24, 1966, entitled "Agglomerated Adsorbent Products of Molecular Sieve Grains." The remaining claims, 1 and 3–6, were also rejected by the examiner. An appeal to the Board of Appeals as to these claims was subsequently withdrawn.

2. As the solicitor points out, the language of claim 7 is somewhat indefinite because "alumina" lacks antecedent basis, although it appears elsewhere in the record that what appellant terms a "partially

dehydrated aluminum trihydrate" is an "alumina."

3. U.S. Patent No. 3,210,267, issued October 5, 1965.

4. U.S. Patent No. 2,881,051, issued April 7, 1959.

5. U.S. Patent No. 2,915,365, issued December 1, 1959. Appellant has not included the Saussol patent in the record before this court. The board did not find it necessary to consider it, nor do we.

chanical strength," and "unexpectedly large microporous volume," and "exceptional binding or adsorptive capacity for water especially at low partial water vapor pressures." Those activated alumina products are prepared by agglomerating appropriately sized particles of a certain partially dehydrated alumina trihydrate, exposing the agglomerate to moisture to harden it, and calcining to activate the alumina.[6] As to uses for his products, Pingard discloses:

> While the foregoing discussion has emphasized the water adsorption or adsorption properties of the alumina of this invention, it will be understood that the alumina aggregates produced in accordance with this invention may be used advantageously in all types and kinds of chemical operations where such activated materials are used, whether used per se *or in combination with other ingredients or chemicals.* Typically, the products may be used *for adsorption, drying of gas,* chromatography, *catalysis,* as support catalysts, in the production of aluminum fluoride by dry processes, in the manufacture of refractory insulators, etc. [Emphasis supplied.]

Against this background, the board stated:

> We are convinced * * * [that] * * * the invention as a whole is obvious, whether one regards it as involving the substitution of the activated alumina of Pingard for the alumina gel or similar binders of Plank et al., or the selection of the molecular sieve material of the latter for inclusion in the agglomerates of activated alumina of Pingard in accordance with the known inclusion of such materials; * * *. We therefore find the rejection to be without reversible error and we will sustain it.

It is apparent from Plank, as well as from the acknowledged state of the art described in appellant's specification, that clay and alumina gel have conventionally been used as agglomerating binders for crystals of molecular sieves having a particle size larger than 1 micron, whether the molecular sieve was to be ultimately used as a catalyst or as an adsorbent. Appellant does not challenge the board's further finding that the adsorbent as well as catalytic properties of both activated alumina and molecular sieves were "well known" in the art prior to his invention. Given the problem appellant asserts to have been present in the agglomerated molecular sieve adsorbent of the prior art—i. e., reduction in adsorption caused by the poor adsorptivity of the conventional clay or alumina gel binders—we think it clear that one of ordinary skill in the art would have had no difficulty in determining, in light of Pingard, that activated alumina would be a suitable binder having the requisite adsorptivity to ameliorate that problem. Indeed, in our view, Pingard strongly suggests that his activated alumina adsorbent may be combined with other suitable ingredients including catalytic materials, depending on the particular adsorption, drying or catalytic process to be carried out.

In rebuttal of the thus-established prima facie obviousness of the claimed subject matter, appellant relies on what he terms an "unexpected," non-obvious increase in adsorption of water by his molecular sieve/activated alumina agglomerate at high relative humidities, in comparison with the water adsorptivity of molecular sieves agglomerated with clay as a binder. The solicitor contends that such result is only the expected one in light of the known "large microporous volume" and "exceptional binding or adsorptive capacity for water especially at low partial water vapor pressures," which Pingard ascribes to the activated alumina component of appellant's agglomerates, and that the higher mechanical strength appellant attributes

---

6. At this point, it is appropriate to point out that appellant's specification refers to Pingard as illustrative of a process for hardening an alumina obtained from partial dehydration of alumina trihydrate by addition of small amounts of moisture.

to his agglomerates would appear to be expected as well.

The record does not show that appellant presented such an argument below to the examiner and board, and we are without the benefit of their views as to whether the "unexpected" increase in adsorptivity of appellant's agglomerates at high relative humidity is truly unexpected. For that reason, we will not consider that argument here. See In re Touvay, 435 F.2d 1342, 58 CCPA 809 (1971); In re Brown, 406 F.2d 780, 56 CCPA 1339 (1969), as modified on petition for rehearing, 412 F.2d 1407, 56 CCPA 1342 (1969), and cases therein.

Finding no error, the decision of the board is affirmed.

Affirmed.